Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | WILLIAM T. HART | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 03 C 6027 | DATE | MARCH 1, 2004 |
| CASE TITLE | UNITED STATES GYPSUM COMPANY v. LAFARGE NORTH AMERICA, INC. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ■ Status hearing set for **MARCH 24, 2004** at **11:00 a.m.**

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
     ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Defendant Lafarge's motion to permit disclosure of protected information to Robert Bruce under the agreed protective order [22-1] is granted in part and denied in part. Plaintiff USG shall permit Robert Bruce to accompany Lafarge's attorneys on any inspections of a mixer at USG's Southard, Oklahoma plant.

(11) ■ [FOR FURTHER DETAIL, SEE ATTACHED MEMORANDUM OPINION AND ORDER.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | 3 number of notices | Document Number |
| | No notices required. | | | |
| ✓ | Notices mailed by judge's staff. | | MAR 0 2 2004 date docketed | |
| | Notified counsel by telephone. | | | 31 |
| | Docketing to mail notices. | | JXM docketing deputy initials | |
| | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | | MARCH 1, 2004 date mailed notice | |
| | cw courtroom deputy's initials | Date/time received in central Clerk's Office | mqm mailing initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DOCKETED

MAR 0 2 2004

UNITED STATES GYPSUM COMPANY,       )
                                    )
            Plaintiff,              )
            Counterdefendant,       )
                                    )
    v.                              )   No. 03 C 6027
                                    )
LAFARGE NORTH AMERICA, INC.,        )
                                    )
                                    )
            Defendant,              )
            Counterplaintiff.       )

## MEMORANDUM OPINION AND ORDER

Plaintiff United States Gypsum Company ("USG") alleges that defendant Lafarge North America, Inc. ("Lafarge") has infringed a patent of USG relating to a method for manufacturing gypsum wallboard. The patent is entitled "Method For Preparing Uniformly Foamed Gypsum Product with Less Foam Agitation." Lafarge has counterclaimed for a declaration that the patent is not infringed and/or is unenforceable. Presently pending is a discovery dispute. As an expert, Lafarge has retained Robert Bruce, Ph.D., whom the parties agree is a highly qualified person in the field. USG, however, objects to Lafarge's use of Bruce because he is a consultant for many of the leading manufacturers

of gypsum wallboard, but not USG. Manufacturers for whom Bruce is a consultant include many of the principal competitors of USG. USG argues that, regardless of any promises contained in a protective order that Bruce would agree to follow in good faith, Bruce's access to USG's confidential information would unfairly result in Bruce using some or all of that information when advising his consulting clients. USG argues that Lafarge should be required to retain other qualified experts that are available.

Resolution of the pending motion requires that the interests involved be balanced. The risk that USG will suffer an unfair competitive disadvantage must be weighed against the burden on Lafarge of having to retain a different expert. See Telular Corp. v. Vox2, Inc., 2001 WL 641188 *1 (N.D. Ill. June 4, 2001); Rice v. United States, 39 Fed. Cl. 747, 751-52 (1997); Advanced Semiconductor Materials America Inc. v. Applied Materials Inc., 43 U.S.P.Q.2d 1381 (N.D. Cal. 1996). The burden is on USG to show the type of confidential information that will need to be disclosed to Lafarge's expert, that this information will be useful to USG's competitors, and that Lafarge's expert is in a position that could allow the information to be used by competitors. See Telular, 2001 WL 641188 at *2; Advanced Semiconductor, 43 U.S.P.Q.2d at 1384; Topps Co. v. Productos Stani Sociedad Anomina Industrial y Commercial, 2001 WL 406193 *1 (S.D.N.Y. April 20, 2001). The burden is on Lafarge to show that

there are not other experts available or that those who are available will be less useful than Bruce. See Telular, 2001 WL 641188 at *3; Rice, 39 Fed. Cl. at 752.

There is no dispute that Bruce is currently a consultant to all or most of USG's major competitors. Although a person may, in good faith, attempt to segregate knowledge learned in confidentiality during litigation, it would be difficult for a person in Bruce's position to segregate any knowledge gained in this case from future analyses provided in his role as a consultant. See Litton Industries, Inc. v. Chesapeake & Ohio Ry., 129 F.R.D. 528, 531 (E.D. Wis. 1990); Safe Flight Instrument Corp. v. Sundstrand Data Control Inc., 682 F. Supp. 20, 22 (D. Del. 1988); Rice, 39 Fed. Cl. at 751. This situation is distinguished from those in which the expert is no longer an active consultant or has not consulted for a competitor in a number of years. See Telular, 2001 WL 641188 at *2; Advanced Semiconductor, 43 U.S.P.Q.2d at 1383. On the pleadings before the court, it can only be concluded that Bruce is in a position where confidential information he may receive would have a significant likelihood of eventually inuring to the benefit of competitors of USG.

To meet its burden, USG must also show that the expert to be retained by Lafarge will have access to confidential information that would be useful to competitors. In its motion,

- 3 -

Lafarge requests that Bruce be granted access to USG-designated protected information, including, <u>but not limited to</u>, accompanying Lafarge attorneys on their inspections of USG manufacturing facilities. In its briefs, Lafarge focuses on inspecting an existing mixer of USG that is in use and incorporates the method set forth in the patent at issue. USG focuses on the "not limited to" nature of the request and contends that Lafarge's expert would be given access to all protected information.

In light of its understanding of information that may be made available to a Lafarge expert, USG provides the affidavit of William White, its Director of Technical Services for Gypsum and Ceilings. It is understandable that USG would leave certain specifics out of the affidavit which is part of the public record in this case. White's affidavit, however, is lacking in specificity and entirely conclusory. He states:

> A tour of USG's gypsum wallboard manufacturing facilities, or parts of them, by a person knowledgeable about gypsum wallboard manufacturing operations, such as Dr. Bruce, would expose that person to a large amount of technically significant and commercially-sensitive information that is proprietary to USG. By way of example, such information includes engineering and operating details unrelated to the subject matter of the patent in suit and information on the operating speed, product mix, capacity, formulation, staffing and trade secret process techniques unique to USG.

White Aff. ¶ 3. As to documents that may be disclosed in discovery, he states that it will include the same type of information plus "identification of ingredients and recipes, identification of suppliers and customers, as well as information on costs, profitability, efficiencies and troubleshooting techniques." Id. ¶ 4. It is stated that deposition testimony would also disclose such information. Id. ¶ 5.

Lafarge's representations regarding alternative experts is also conclusory. It is contended that Lafarge has not been in the wallboard business for very long and has no retired employees who would be available to fill the expert role.[1] It is represented that:

> Lafarge counsel expended considerable effort to locate individuals well acquainted with the gypsum wallboard making process. Some candidates contacted chose not to participate. Others contacted did not have Dr. Bruce's depth of knowledge of gypsum wallboard manufacturing. Dr. Bruce's long tenure in the gypsum wallboard manufacturing industry coupled with his successful consulting practice make him the ideal expert to analyze and inform the Court and Lafarge of the gypsum wallboard process technology at issue in this case.
> . . . As a result of its search, Lafarge has located a university professor well qualified in areas related to fluid dynamics, who will be

---

[1] USG questions this representation. USG contends that affiliated corporations related to Lafarge have been in the wallboard business for a number of years and there is no representation that retired employees of those companies have been considered.

- 5 -

> helpful in understanding and explaining certain
> aspects of the wallboard making process.

Lafarge Reply at 8-9.[2]

Balancing the interests involved is difficult in light of the limited presentations made by the parties. It appears possible that disclosure of certain information to Bruce could be prejudicial to USG, but it is unclear which such information or whether that information is part of what Lafarge intends to make available to Bruce. It would seem that specific information about formulae, ingredients, and recipes would be the type of information that would cause concern if disclosed to Bruce, but it is not at all clear that such information is relevant to the method patent at issue. It would also seem that financial and customer information that may be disclosed because possibly relevant to the issue of damages is not the type of information that need be provided to a technical expert such as Bruce. USG's presentation is insufficient to show that, allowing Bruce to inspect particular USG equipment that uses methods disclosed in the patent, will result in the disclosure of confidential information that would potentially be advantageous to competitors

---

[2] These representations are not supported by an affidavit. Lafarge offers to provide a more detailed disclosure in camera, but there would certainly be more details that could have been publicly disclosed and Lafarge could have at least supported its summary description with an affidavit.

if subsequently considered by Bruce when consulting with USG competitors.

On the presentation before the court, the narrow issue expressly raised by Lafarge's motion is all that will be decided. Since there is no adequate showing that an inspection of specific equipment is sufficiently likely to cause harm to USG, USG will be required to permit Bruce to inspect such equipment. USG shall permit Bruce to accompany Lafarge attorneys when inspecting the mixer at USG's Southard, Oklahoma facility.[3] Whether Bruce is permitted access to any other confidential discovery is presently left for the parties to attempt to resolve in light of today's ruling.

Before the parties again bring this issue before the court, they must make a good faith effort to resolve this dispute by agreement. That would include actual consideration of whether specific confidential information is likely to be useful to competitors if disclosed to Bruce. USG apparently is already prepared to make document disclosures to plaintiff, including confidential documents. USG should inform Lafarge's attorneys as to which confidential documents it contends should not be disclosed to Bruce. USG (and Lafarge as well) should keep in mind that it should not overuse its designation of documents as

---

[3]This mixer is referenced in a December 24, 2003 letter from USG attorney Bruce Gagala. See Lafarge Reply Exh. G.

confidential. Although the parties may designate certain discovery as confidential, should this case reach the stage of summary judgment or trial, much of that material will nevertheless become public. This court will not necessarily agree with the parties' designations of confidential materials and will only permit the filing of summary judgment materials outside the public record if truly justified. See Citizens First National Bank of Princeton v. Cincinnati Insurance Co., 178 F.3d 943 (7th Cir. 1999); Sasu v. Yoshimura, 147 F.R.D. 173 (N.D. Ill. 1993). Since such materials would otherwise become part of the public record, they are not the type of materials that could be withheld from Bruce. As to Lafarge, it must give serious consideration to whether there are other available experts. Lafarge would also have to consider whether Bruce would be used along with other experts and, if so, what confidential information Lafarge would want to be available for Bruce's analysis. Moreover, the parties must candidly disclose to each other their views on the above matters. It is expected that the parties will be able to resolve this matter without the need of further assistance from the court.

IT IS THEREFORE ORDERED that defendant Lafarge's motion to permit disclosure of protected information to Robert Bruce under the agreed protective order [22-1] is granted in part and denied in part. Plaintiff USG shall permit Robert Bruce to

accompany Lafarge's attorneys on any inspections of a mixer at USG's Southard, Oklahoma plant. A status hearing will be held on March 24, 2004 at 11:00 a.m.

ENTER:

*William T. Hart*
UNITED STATES DISTRICT JUDGE

DATED: MARCH 1, 2004