**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES GYPSUM COMPANY,** | ) | |
| | ) | |
| **Plaintiff** | ) | |
| | ) | |
| v. | ) | No. 03 C 6027 |
| | ) | |
| **LAFARGE NORTH AMERICA INC.,** | ) | Judge Rebecca R. Pallmeyer |
| **LAFARGE S.A., DAVID DOWNS, JOHN D.** | | |
| **YOCKEY, ED GREEN, WILLIAM** | ) | |
| **HARTFORD, WALTER WELDON,** | ) | |
| **KURT F. KURZSHAK, and SIDNEY** | ) | |
| **SPEAR,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**MEMORANDUM OPINION AND ORDER**

In this lawsuit, Plaintiff United States Gypsum Company ("USG") accuses Defendant Lafarge North America ("Lafarge") and several individual Defendants, all former USG employees now employed by Lafarge, of acquiring confidential USG proprietary information. In addition to its claims of patent infringement and misappropriation of trade secrets, USG seeks to recover on common law claims of misappropriation of information, conversion, breach of fiduciary duty and tortious inducement of that breach, and unjust enrichment. The parties dispute whether there is any evidence that Defendants actually used the information they are alleged to have misappropriated or converted. Even without evidence of such use, USG urges, it is entitled to substantial recovery for Defendants' alleged wrongdoing. The court has expressed doubt that Plaintiff is entitled to any compensatory damages on these state law claims, absent a showing that Defendants actually used the information, and the parties have submitted briefs on this issue. (Docket Entries 713, 735.) For the reasons explained here, the court stands by its conclusion that, in the event Plaintiff is unable to prove Defendants actually used USG information, Plaintiff's recovery on its common law claims will be limited to nominal and possible punitive damages.

**DISCUSSION**

A.      **Misappropriation of Information**

Illinois recognized the tort of misappropriation, a form of unfair competition, in *Capitol Records, Inc. v. Spies*, 130 Ill. App. 2d 429, 264 N.E.2d 874 (1st Dist. 1970). In that case, the defendant purchased plaintiff's records of musical recordings and then re-recorded the music on tapes and sold the tapes to other purchasers at a lower price than that charged by the plaintiff. Concluding that plaintiff was entitled to a preliminary injunction, the court reasoned that the defendant engaged in unfair competition when it avoided the costs normally associated with producing recordings by relying on plaintiff's efforts. *Id.* at 434-35. "Underlying the court's reasoning is the premise that the plaintiff's pecuniary reward for producing its intangible product would be severely reduced if other competitors could avoid production costs by merely waiting until a record became popular and then recording the work for resale." *Board of Trade of City of Chicago v. Dow Jones & Co.*, 98 Ill.2d 109, 118-19, 456 N.E.2d 84, 88 (1983).

More recently, Illinois courts have also recognized a broader, more general, definition of misappropriation as "the unauthorized, improper, or unlawful *use* of property for a purpose other than that for which it was intended." *In re Vogel*, 291 Ill. App. 3d 1044, 1050, 684 N.E.2d 1035, 1039 (2nd Dist. 2001)(emphasis added). In any formulation, however, the harm that results from wrongful misappropriation of information results from the defendant's use of that information. Thus, in a case where a defendant had obtained confidential information and used it to manipulate the price of the corporate plaintiff's stock, the Seventh Circuit characterized the harm suffered by the plaintiff as the "loss of *exclusive use* of its confidential business information." *FMC Corp. v. Boesky*, 852 F.2d 981, 994 (7th Cir. 1988)(emphasis added). Without elaborating on the method for determining damages, the court observed that a successful plaintiff "is entitled to recover the best measure of the value of the denial of its *exclusive use* of the information." *Id.* (emphasis added).

Although these cases recognize that a plaintiff is harmed when its confidential information is disclosed, the opinions are consistent with this court's conclusion that any damages award for misappropriation must be predicated on a showing that a defendant not only wrongfully obtained information but also employed that information to the plaintiff's detriment. The only relief addressed in *Capitol Records, Inc.* was equitable: the court remanded for entry of a preliminary injunction. 130 Ill. App.3d at 435, 264 N.E.3d at 877. Indeed, had the defendant in that case done nothing more than make a copy of a record that he never resold, the plaintiff would have suffered no economic loss. The court draws the same conclusion in this case. There is no claim that Defendants have resold USG's proprietary information, and if Lafarge did not actually use or rely on that information, USG has suffered no harm; its pecuniary reward for developing the proprietary information remains unaffected. USG is entitled to an injunction requiring the return of its information and prohibiting Defendants from making any use of it, but not to any award of compensatory damages.

Absent evidence that Defendants did, in fact, use USG information in some way, Plaintiff's monetary recovery for misappropriation will be limited to nominal damages.

**B.    Conversion**

To establish a claim for conversion under Illinois law, a plaintiff must show: (1) defendant's unauthorized or wrongful assumption of control, dominion, or ownership over a plaintiff's personal property; (2) plaintiff's right in the property; (3) plaintiff's right to immediate possession of the property, absolutely and unconditionally; and (4) plaintiff's demand for possession of the property. *Van Diest Supply Co. v. Shelby County State Bank*, 425 F.3d 437, 439 (7th Cir. 2005). Conversion is an unauthorized act that deprives a person of his property permanently or for an indefinite amount of time. *Cruthis v. Firstar Bank, N.A.,* 354 Ill. App. 3d 1122, 1131, 822 N.E.2d 454, 463 (5th Dist. 2004). "'The essence of conversion is the wrongful deprivation of one who has a right to the immediate possession of the object unlawfully held.'" *Id.,* quoting *Bender v. Consolidated Mink Ranch, Inc.*, 110 Ill. App. 3d 207, 213, 441 N.E.2d 1315 (2nd Dist. 1982).

Plaintiff has not been deprived of its information in this case. It is undisputed that USG maintained possession of every original document that it claims Defendants took and copied. As the Seventh Circuit has stated, "[I]n cases where the alleged converter has only a copy of the owner's property and the owner still possesses the property itself, the owner is in no way being deprived of the use of the property. The only rub is that someone else is using it as well." *FMC Corp. v. Capital Cities/ABC, Inc.*, 915 F.2d 300, 303-04 (7th Cir. 1990)(applying California conversion law). Such a case "should not ordinarily give rise to a claim of conversion." *Id.* at 303. Extending this logic, in a case where the alleged converter has not even used the copied document, plaintiff suffers no cognizable injury from the conversion.

On rare occasions, Illinois courts have found that a defendant may be guilty of conversion even if the plaintiff has not been deprived of access to the information. *See Bilut v. Northwestern University*, 296 Ill. App. 3d 42, 52, 692 N.E.2d 1327, 1334 (1st Dist. 1998)(recognizing a claim for conversion against a university and professor accused of plagiarizing ideas from a student's research);[1] *Conant v. Karris*, 165 Ill. App. 3d 783, 792, 520 N.E.2d 757, 767 (1st Dist. 1987)(recognizing a claim against a real-estate broker who used an ill-gotten printout of a competitor's confidential information to undercut the competitor's bid on a piece of property). Significantly, in such cases, the converted information was *actually used* or implemented by the defendant. Thus, in reversing the dismissal of a conversion claim in *Conant,* the appellate court noted that "the complaint sufficiently alleges that the [confidential information] . . . was *used* by defendants." *Id.* at 792, 520 NE.2d 763 (emphasis added). The plaintiff therefore lost the value of the information because "[o]nce confidential information is released to competitors, it hardly can be said that the data is still confidential. Thus the original owner would be deprived of the benefit

---

[1] While the *Bilut* court recognized that the plaintiff would have been entitled to maintain an action for conversion on the merits, the court nevertheless affirmed the lower court's grant of summary judgment because Bilut's claim was barred by the statute of limitations.

of the information." *Id.* In *Bilut*, the basis for the conversion claim was the defendants' appropriation, republication, and use of the plaintiff's research, thereby depriving the plaintiff of control over her work. *Bilut*, 296 Ill. App. 3d at 52 ("[Plaintiff's allegations] incorporate elements beyond mere reproduction or the like. Plaintiff also alleges loss of physical control over her research project as well as deceitful and fraudulent conduct.") The *Bilut* opinion's focus on the loss of physical control does not satisfy this court that the plaintiff in that case would have been entitled to recover on a mere showing that the defendants read her research report or even that they maintained a copy in their library. Likewise, in *Conant*, the plaintiff would not have been required to "sufficiently allege use" if mere acquisition of information were all that were required.

The conclusion that a showing of use is necessary for an award of damages is informed by practical considerations, as well. Damages must be ascertained in some rational way from the evidence, *Long v. Arthur Rubloff & Co.*, 27 Ill. App. 3d 1013, 1025, 327 N.E.2d 346, 355 (1st Dist 1975), and Illinois law contemplates that an award of damages for conversion will be based on the reasonable value of the property during the period of wrongful detention. *Cruthis v. Firstar Bank, N.A.*, 354 Ill. App. 3d at 1137, 822 N.E.2d at 468. Such an award is "predicated on the existence and proof of evidence that discloses a reasonable rental *or use* value of the converted property." *Id.* (citing *Barrelett v. Bellgard*, 71 Ill. 280, 282 (1874).) In the case before this court, where the information at issue has value because it enables the manufacture of drywall, the only way to determine the monetary value of the information at issue here is from its use–that is, Plaintiff's losses can be measured in a rational way only on the basis of profits Lafarge enjoyed or the profits Plaintiff was deprived of as a result of Lafarge's access to the information. In this case, although Lafarge had access to the information at issue, it is undisputed that Plaintiff's own access to the information was unimpeded. Thus, Defendants' conduct did not deprive Plaintiff of the "actual value" of the information, *Jensen v. Chicago and Western Indian Railroad Co.*, 94 Ill. App. 3d 915,

935, 419 N.E.2d 578, 594 (1st Dist. 1981), and the only appropriate measure of Plaintiff's damages will be the profits Lafarge enjoyed as a result of its use of that information.

If Plaintiff fails to prove that Defendants actually used USG information, the court will limit Plaintiff's potential recovery for conversion to nominal damages.

### C. Inducement and Breach of Fiduciary Obligations

Plaintiff accuses the individual Defendants of breaching their fiduciary obligations as USG agents. To state a cause of action for breach of fiduciary duty under Illinois law, a plaintiff must allege and ultimately prove (1) a fiduciary duty on the part of the defendant, (2) a breach of that duty, (3) an injury, and (4) a proximate cause between the breach and the injury. *Alpha School Bus Co. v. Wagner*, 391 Ill. App. 3d 722, 747, 910 N.E.2d 1134, 1158 (1st Dist. 2009). Plaintiff also accuses Lafarge of tortious inducement of a breach of fiduciary duty. Under Illinois law, a party is liable for tortious inducement if the plaintiff demonstrates the defendant (1) colluded with a fiduciary in committing a breach; (2) knowingly participated in or induced the breach of duty; and (3) knowingly accepted the benefits resulting from the breach. *Borsellino v. Goldman Sachs Group, Inc.*, 447 F.3d 502, 508 (7th Cir. 2007).

The court concludes that in order for USG to recover compensatory damages on this claim, again, USG must prove that it suffered economic loss by virtue of Defendants' breach. As the Seventh Circuit has stated, where a plaintiff has suffered no economic loss resulting from a breach of fiduciary duty, the "no harm, no foul" rule applies. Considering a claim for breach of fiduciary duty in *Mira v. Nuclear Measurements Corp.*, 107 F.3d 466, 473 (7th Cir. 1997), the court observed:

> It is a longstanding principle in civil law that there can be no monetary recovery unless the plaintiff has suffered harm. Therefore, even if the defendants did breach the fiduciary duties they owed to the plaintiffs . . . [the plaintiffs] are not entitled to recovery of damages for that breach absent proof of an actual economic loss. To hold otherwise would result in a windfall . . . .

*Id.* (internal citations omitted). In this case, Plaintiff can have suffered actual economic loss only to the extent that its competitor Lafarge actually used the information allegedly obtained through

6

Defendants' breach of duty. If Plaintiff cannot show economic loss, it will not be entitled to compensatory damages.

With regard to other forms of redress, Illinois law gives courts wide latitude in fashioning remedies for fiduciary breach claims. "When one breaches a fiduciary duty to a principal the appropriate remedy is within the equitable discretion of the court." *In re Marriage of Pagano*, 154 Ill.2d 174, 190, 607 N.E.2d 1242, 1249-50 (1994).[2] Because the extent of Plaintiff's harm depends on whether Defendants actually used USG proprietary information and thereby undermined Plaintiff's competitive or technological advantage, the court concludes that to support an award of compensatory damages, USG must show that Lafarge actually used or benefitted from the information obtained through the alleged breach of fiduciary duties. Absent such a showing, Plaintiff's monetary recovery will be limited to nominal and possible punitive damages.

**D.    Unjust Enrichment**

A cause of action based on a theory of unjust enrichment under Illinois law requires a showing that the defendant has unjustly retained a benefit to the plaintiff's detriment, and that defendant's retention of the benefit violates principles of justice, equity, and good conscience. *HPI Health Care Servs. Inc. v. Mt. Vernon Hosp., Inc.*, 131 Ill. 2d 145, 160, 545 N.E.2d 672, 679 (1989), *cited by Association Benefit Servs., Inc. v. Caremark RX, Inc.*, 493 F.3d 841, 854 (7th Cir. 2007). "If that situation exists, principles of quasi-contract mandate the imposition of an obligation upon the benefit receiver to avoid the unjust enrichment. The obligation imposed is an obligation to pay money to the benefit provider, an obligation closely akin to a duty to make restitution." *Midcoast Aviation, Inc. v. General Elec. Credit Corp.*, 907 F.2d 732, 737-38 (7th Cir. 1990)(collecting cases).

---

[2] For an egregious breach, forfeiture of compensation by the fiduciary may be, but need not be, required by the court. *Pagano*, 154 Ill.2d at 190, 607 N.E.2d at 1249-50. The individual Defendants recovered no compensation from the principal (USG) during the period of the alleged breach, however. Nor would an award related to their salaries from Lafarge be appropriate; in this case, the court has previously excluded evidence of the individual Defendants' salaries. (Order, D.E. 446; Motion, D.E. 305.)

Damages recoverable for unjust enrichment are measured by the extent of the actual enrichment, that is, the true benefit retained by the defendant. *See Creative Demos, Inc. v. Wal-Mart Stores, Inc.*, 142 F.3d 367, 372 (7th Cir. 1998).

As explained earlier, the monetary value of the information Defendants allegedly obtained in this case is entirely derived from its potential use and application. USG has not explained how Defendants are quantifiably enriched as a result of their mere acquisition and possession of USG technical information. If the paper or disks containing the information in fact sat on a shelf gathering dust, that information conferred no actual benefit on Defendants. Perhaps, in that circumstance, Defendants might have received some minimal psychological assurance from the knowledge that they had access to and could refer to the information if needed, but such a benefit alone would justify no more than an award of nominal damages–in addition, of course, to an order directing that the material be returned.

### D.     Availability of Punitive Damages

"Punitive, or exemplary, damages are not awarded as compensation, but serve instead to punish the offender and to deter that party and others from committing similar acts of wrongdoing in the future." *Tri-G, Inc. v. Burke, Bosselman & Weaver*, 222 Ill.2d 218, 267, 856 N.E.2d 389, 417 (2006). Illinois law allows punitive damages for torts that are committed "with fraud, actual malice, deliberate violence or oppression, or when the defendant acts willfully, or with such gross negligence as to indicate a wanton disregard of the rights of others." *Loitz v. Remington Arms Co.*, Inc., 138 Ill.2d 404, 415, 563 N.E.2d 397, 402 (1990)(quoting *Kelsay v. Motorola, Inc.*, 74 Ill.2d 172, 186, 384 N.E.2d 353 (1978)). Accordingly, Illinois courts regularly award punitive damages for conversion and breach of fiduciary duty claims. *E.g., Cirrincione v. Johnson,* 184 Ill.2d 109, 114, 703 N.E.2d 67, 70 (1998); *In re Estate of Hoellen*, 367 Ill. App.3d 240, 251-53, 854 N.E.2d 774, 785-76 (1st Dist. 2006) (awarding punitive damages even where the actual damages were nominal). Punitive damages may be particularly appropriate for breach of fiduciary duty claims,

where the law is concerned not only with compensating wronged plaintiffs but also with deterring wrongful action. *See Frey v. Fraser Yachts*, 29 F.3d 1153, 1159 (7th Cir. 1994) ("Agency law is designed not only to remedy damages suffered by the principal, it is also intended to remove any temptation an agent might have to breach his fiduciary duties by acting against a principal's best interests.")

Plaintiff contends Defendants engaged in the large-scale, deliberate, and willful theft of its proprietary information. Should Plaintiff prevail in establishing its claims, the court will consider the propriety of an award of punitive damages.

## **CONCLUSION**

For the reasons stated, the court concludes that, should Plaintiff be unable to prove that Defendant actually used USG proprietary information, Plaintiff's recovery on its common law claims will be limited to nominal and possible punitive damages.

ENTER:

Dated: November 16, 2009  
_____  
REBECCA R. PALLMEYER  
United States District Judge

(USG_State_Claims-Damages)