**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES GYPSUM COMPANY,** | ) | |
| **Plaintiff** | )<br>)<br>) | |
| v. | )<br>) | No. 03 C 6027 |
| **LAFARGE NORTH AMERICA INC.,**<br>**LAFARGE S.A., DAVID DOWNS, JOHN D.**<br>**YOCKEY, ED GREEN, WILLIAM**<br>**HARTFORD, WALTER WELDON,**<br>**KURT F. KURZSHAK, and SIDNEY**<br>**SPEAR,** | )<br>)<br>)<br>)<br>)<br>)<br>) | Judge Rebecca R. Pallmeyer |
| **Defendants.** | )<br>) | |

## MEMORANDUM OPINION AND ORDER

In this lawsuit, pending since 2003, Plaintiff United States Gypsum Company ("USG") claims that Defendants Lafarge North America, Inc. ("Lafarge"), Lafarge's parent company, and several former USG employees now working for Lafarge, are guilty of infringing USG's patents and stealing confidential information relating to the manufacture of gypsum wallboard. The precise scope of the confidential information at issue in the case is hotly contested. In March 2008, Defendants moved *in limine* to exclude any evidence concerning proprietary information that (1) is not related to six trade secrets and 14 proprietary items identified in a February 6, 2008 letter from USG's lead counsel; (2) was not addressed by the court in its summary judgment order of April 3, 2007; or (3) for which there was no evidence that Defendants actually used the information in their business. (Motion, D.E. 295 at 2.) In January 2009, Judge Hart of this court granted Defendant's motion without specifying exactly what information would be excluded. (Order, D.E. 446.) The parties now seek further clarification of Judge Hart's order and, for the reasons explained here, that motion is granted in part and denied in part.

## BACKGROUND

In April 2007, Judge Hart issued a comprehensive opinion in which he addressed certain

patent issues and a number of Plaintiff's trade secret claims. *United States Gypsum Co. v. Lafarge North America, Inc.*, 508 F.Supp.2d 601, 623-38 (N.D. Ill. 2007). As more fully explained in that opinion, the court granted summary judgment in favor of Defendant on USG's trade secret claims relating to (1) construction specifications; (2) the Kettle and Mixer drawings and "Hooker Booker" blueprints; (3) the fiberglass feeding device; (4) the "Red Valve" extractor; (5) the slotted forming plate; (6) sales information; (7) the ice cleaner; and (8) the hose shaker. *Id.* at 623-36. Trade secret claims that survived the summary judgment ruling are limited to the following: (1) cockle reduction technology; (2) board formulation sheets; (3) USG power point presentations; (4) the "2000 document"; (5) the operating bulletins USG listed on Page 9 of its Second Revised List of Trade Secrets (Revised List, Ex. 4 to Pl.'s Resp., D.E. 369), (6) the "Gypsum Basics" document, (7) certain running speed documents, (8) certain cost documents, and (9) USG's financial reporting analysis package ("FRAP"). *United States Gypsum Co.,* 508 F.Supp.2d at 636.

To the extent that USG's confidential or proprietary information does not qualify as a trade secret, Defendants argued, claims arising from that information are preempted by the Illinois Trade Secrets Act, 765 ILCS 1065/1 *et seq.* Adhering to his understanding of Seventh Circuit precedent on this issue, Judge Hart declined to dismiss USG's information-related state law claims (conversion, unfair competition, unjust enrichment, and breach of fiduciary duty). The court recognized, however, that "[a]lthough not formally raised by defendants, the factual grounds for dismissing some of the trade secrets claims may also be a basis for partially dismissing related state law claims." *Id.* at 638. Judge Hart urged Plaintiff to "act in good faith and withdraw any related claims that might lack merit in light of today's rulings regarding particular trade secrets." *Id.* In a subsequent order, the court specifically barred Plaintiff from pursuing "any trade secret or related claim based on a trade secret other than the ones listed in the summary judgment ruling as having survived summary judgment," and reiterated its expectation that USG would dismiss state law claims that lack merit. *United States Gypsum Co. v. Lafarge North America, Inc.*, No. 03 C

6027, 2007 WL 2091020 (N.D. Ill. Jul. 18, 2007).

In a letter dated February 6, 2008, USG's lead counsel, H. Michael Hartmann, identified six alleged trade secrets and 14 other confidential matters for which USG intended to seek monetary and injunctive relief. (Letter, Ex. 52 to Def. Mot.) Hartmann noted, however, that other non-listed items also constitute "confidential, proprietary, and/or trade secret USG information," and that USG reserved "the right to refer thereto at trial." (*Id.* at 2.) The following month, Defendants filed their motion *in limine* to exclude any reference to items other than the 20 items listed in the February 6 letter. (Motion, D.E. 295 at 2.) Defendants also contended that USG had failed to act in good faith to drop its unmeritorious state law claims and asked the court to exclude evidence of certain other items as being inconsistent with the court's summary judgment opinion. (*Id.*) Lastly, Defendants moved to exclude any item for which Plaintiff could not present evidence of Defendants' use. (*Id.*) Specifically, Defendants sought to exclude all evidence relating to (1) running speed documents, (2) cost documents, (3) FRAP information, (4) construction specifications, (5) the forming plate, (6) the Red Valve, (7) Kettle and Mixer drawings, (8) Hooker Booker blueprints, (9) all bulletins not listed on USG's Page 9 of its Second Revised List of Trade Secrets, and (10) any other piece of information for which there was no evidence of Defendants' use. Judge Hart granted that motion, but his ruling was "without prejudice to the right of plaintiff to separately move after trial for trial of any state law claims that may be in effect precluded" by the exclusion of such evidence. (Order, D.E. 446, at 2.) Judge Hart's order did not specify exactly what evidence was to be excluded, however, and the court here will attempt to clarify that ruling.

## **DISCUSSION**

**A.  Evidence on Items Conceded by USG**

Defendants first contend that Plaintiff must be limited to the claims identified in Plaintiff's February 6 letter so that Defendants are "able to confidently train their attention" on the items Plaintiff listed. Accordingly, Defendants move for the exclusion of evidence relating to (1) running

3

speed documents, (2) certain cost documents, and (3) FRAP information, all items that were not specifically referenced in the February 6 letter. USG concedes that it seeks no recovery based on these items. (Pl.'s Resp. At 14.) Based on the parties' apparent agreement that this information is not relevant to any claim Plaintiff intends to present to the jury, the court grants Defendants' motion to exclude evidence on the running speed documents, certain cost documents, and FRAP materials. Plaintiff is instructed to refrain from mentioning these items in the context of its other claims.

**B.     Evidence on Items Addressed on Summary Judgment**

Defendants further urge the exclusion of all evidence relating to (1) construction specifications, (2) the Forming Plate, (3) the Red Valve, (4) Kettle and Mixer drawings, (5) Hooker Booker blueprints, and (6) all bulletins not listed on USG's Page 9 of its Second Revised List of Trade Secrets. Judge Hart dismissed trade secret claims relating to these items, and Defendants argue that presenting the same items as the basis for USG's other state law claims would be irrelevant, prejudicial, and confusing or misleading to the jury.

**1.     Preemption**

Defendants insist they are not reasserting the argument that the Illinois Trade Secrets Act, 765 ILCS 1065/1 *et seq.*, ("ITSA") preempts other state law claims for misuse of confidential information. The court nevertheless pauses to acknowledge the confusion generated by this issue. In *Composite Marine Propellers, Inc. v. Van der Woude*, 962 F.2d 1263 (7th Cir. 1992), the Seventh Circuit was referring specifically to common law claims of unfair competition and breach of fiduciary duty when it observed that "Illinois has abolished all common law theories of misuse of [confidential] information," citing ITSA. *See also PepsiCo, Inc. v. Redmond*, 54 F.3d 1262, 1271 (7th Cir. 1995) ("the ITSA abolished common law causes of action for misappropriation of trade secrets."). Citing this authority, courts in this Circuit, including this one, dismissed common law claims for misuse of confidential information. *Do It Best Corp. v. Passport Software, Inc.*, No. 01 C 7674, 2004 WL

4

1660814, *10 (N.D. Ill. July 23, 2004) (dismissing fraud claims that merely restated plaintiff's claim for misappropriation of trade secrets); *Thomas & Betts Corp. v. Panduit Corp.*, 108 F. Supp.2d 968, 974 (N. D. Ill. 2000) (same).

The Seventh Circuit addressed the reach of ITSA preemption more recently in *Hecny Transp., Inc. v. Chu*, 430 F.3d 402 (7th Cir. 2005). In *Hecny*, the plaintiff, a worldwide shipping network, discovered that the manager of its Chicago operations had set up a competing business using the plaintiff's physical plant, its employees, and its customer lists. The customer lists were not trade secrets, but the Court of Appeals noted that this conclusion did not require dismissal of all plaintiff's claims: although ITSA forecloses state claims that rest on conduct that allegedly misappropriates trade secrets, "it is unimaginable that someone who steals property, business opportunities, and the labor of the firm's staff would get a free pass just because none of what he filched is a trade secret." 430 F.3d at 404. In other words, ITSA preemption "'does not apply to duties imposed by law that are not dependent upon the existence of competitively significant secret information, like an agent's duty of loyalty to his or her principal'." *Id.* at 405, quoting the UNIFORM TRADE SECRETS ACT OF 1985, §7, Commissioners' Cmt.

### 2. Judge Hart's Trade Secret Rulings

Without specifically addressing which of USG's state law claims are dependent on the existence of "competitively significant secret information," Judge Hart declined to dismiss any of Plaintiff's state law claims. *United States Gypsum Co.,* 508 F.Supp.2d at 638. Judge Hart did, however, grant Defendant's motion *in limine.* Specifically, he excluded evidence that does not directly support USG's trade secret claims, but reserved the possibility that USG might seek a further trial on its remaining state law claims.

In light of the length of time this case has been pending and the enormous expense it has generated, this court is reluctant to contemplate a second trial, regardless how narrowly focused. The court is therefore inclined to revisit Judge Hart's ruling in principle and permit USG to introduce

5

evidence relevant to its state law claims of conversion, unfair competition, unjust enrichment, and breach of fiduciary duty. The court cautions that any such claims that are indeed wholly "dependent upon the existence of competitively significant secret information" are preempted, even post-*Hecny*. Moreover, as a practical matter, much of what Defendants asked the court to exclude may not be relevant, even to those non-ITSA state law claims. As explained in another opinion issued today, the court has concluded that, absent a showing that Defendants actually used the information they are alleged to have converted or otherwise misused, Plaintiffs are not entitled to an award of compensatory damages. Significantly, Judge Hart's dismissal of several of USG's trade secret claims rested squarely on his conclusion that USG has no evidence that Defendants actually used the purportedly stolen information: Judge Hart concluded that USG had not shown that Defendants used the construction specifications, the Kettle and Mixer Drawings, the Hooker Booker blueprints, or the intermittent restriction feature of the Red Valve. If Defendants did not use these items, USG may be entitled to equitable relief in the form of an order directing that the relevant materials be returned, but not to an award of damages, and there will be no need to present evidence to the jury in support of these common law claims for recovery.

USG asks the court to revisit Judge Hart's summary judgment conclusions, but in the main its arguments are not persuasive. Regarding the construction specifications, Judge Hart carefully considered the evidence that Defendant Weldon took the USG Construction Specifications with him to Lafarge, attached a Lafarge cover page to them, and placed them on a bookshelf in a construction trailer, accessible to Lafarge employees. Judge Hart concluded this evidence is insufficient to establish that the specifications were used in Lafarge's business. 508 F. Supp. 2d at 626. USG is correct that this evidence supports a claim of conversion (Opposition Memorandum, D.E. 386, at 4), but for reasons discussed elsewhere, absent evidence of use, the damages for this claim amount to no more than the cost of paper and binders that Weldon took.

Similarly, Judge Hart found no evidence that Lafarge "used any of the kettle, mixer, or hooker booker information in its business." 508 F. Supp.2d at 627. USG contends that "[i]t is entirely possible that copies of the drawings survive at Lafarge or with Mr. Kruzshak today, or may be recovered from allegedly deleted files." (D.E. 386, at 10.) Respectfully, this court is confident that any such possibilities would have been unearthed in the discovery in this case. USG is correct, however, that it is entitled (even without offering evidence on the matter at trial) to an injunction prohibiting Defendants' further possession, use or disclosure of these materials.

USG insists (D.E. 386, at 8) that its trade secret relating to the Red Valve is not limited to the "pulsing" or intermittent restriction that Judge Hart found was not in use at Lafarge. 508 F. Supp. 2d at 629-30. According to USG, "[b]ladder valves . . . had never been used to control gypsum slurry flow before USG developed that concept." Yet USG has not suggested that the use of the Red Valve by itself is protectable information, nor has USG described what aspect of its "system for preventing clogging of the extractor including an air piston or bladder valve" (other than intermittent pulsing) constitutes competitively significant secret information. The court is not inclined to revisit Judge Hart's ruling on this issue. The fact that Lafarge is not currently using the pulsing feature means that USG has suffered no damages, and is entitled to no remedy for Defendants' use of a "pinch valve" beyond an order precluding use of that protected feature.

That leaves USG's arguments concerning certain Information Bulletins and the Slotted Forming Plate. Beyond the bulletins USG identified on "page 9 of its Second Revised List," USG has identified two additional bulletins for which it claims trade secret status. This satisfies Judge Hart's direction that USG "point to particular secrets within that [11,000 page] document." 508 F. Supp. 2d at 636. Defendants' request that these two additional bulletins be excluded will be denied.

Regarding the Slotted Forming Plate, Judge Hart concluded that "[s]lotting metal to make it more flexible is a common practice" and that "cutting slots in forming plates is a commonly known procedure that is easily implemented." *Id.* at 630. USG insists that its trade secret is not properly

7

limited to "the use of any forming plate with any notch," and that the forming plate trade secret involves the precise location of certain slots and grooves in the forming plate configuration. (D.E. 386, at 5-6.) USG notes that its competitors refused to provide information regarding the configuration of their own forming plates and asserts that "[v]irtually exact replicas of USG's forming plate configuration were found in several plants within Lafarge." *Id.* at 7. This court is willing to reconsider Judge Hart's determination on this issue, but only in the context of a hearing outside the presence of the jury. If the forming plate technology is in fact limited to a metal groove, easily recreated by reverse engineering or trial and error, the court will bar this evidence from the trial.

C.     **Evidence of Defendant's Pattern of Conduct**

USG contends that some disputed items, while not forming the basis for independent claims for recovery, are nevertheless relevant because they establish a pattern of conduct and conspiracy among the various defendants. In essence, Plaintiff seeks to introduce evidence of other alleged wrongdoing under Rule 404(b) to show proof of Defendants' motive, opportunity, intent, preparation, or plan. FED. R. EVID 404. This court agrees that evidence showing that a substantial amount of USG information was acquired by Defendants may be relevant to demonstrating Defendants' mental states in this case. Mental state is a fact of consequence because at least some of Plaintiff's claims may support an award of punitive damages, should the jury determine Defendants acted "willfully, or with such gross negligence as to indicate a wanton disregard of the rights of others." *Loitz v. Remington Arms Co.*, Inc., 138 Ill.2d 404, 415, 563 N.E.2d 397, 402 (1990)(quoting *Kelsay v. Motorola, Inc.*, 74 Ill.2d 172, 186, 384 N.E.2d 353 (1978)).

USG believes that the totality of the confidential information found in Defendants' possession could permit a reasonable trier of fact to infer that Defendants acted willfully or with wanton disregard to improperly acquire as much information as possible. As explained here and elsewhere, the court will not permit USG to seek independent recovery on the trade secret claims

that Judge Hart dismissed, nor to pursue other state law damages theories with respect to information that Lafarge has not used in its business. Evidence concerning the scope and variety of USG information acquired by Defendants may, however, be relevant for the purpose of demonstrating Defendants' possible intent, motive, or plan in acquiring the information. Assuming the evidence is presented with reasonable dispatch and with appropriate limiting instructions, the court concludes that the potential for prejudice or confusion will not substantially outweigh the probative value of this evidence. Defendants' motion is denied to this extent.

## **CONCLUSION**

Defendants' motion *in limine* [295] is granted in part and denied in part. By agreement, evidence of running speed documents, cost documents, and FRAP information will be excluded. The court cautions that claims that are wholly dependent upon the existence of competitely significant secret information are preempted by ITSA, and that Plaintiff will not be permitted to offer evidence in support of any state law claims absent a showing of measurable economic harm resulting from them. Accordingly, as Judge Hart found no dispute of material fact concerning Defendants' use of the construction specifications, intermittent pulsing of the Red Valve, Kettle and Mixer drawings, or Hooker Booker blueprints, evidence concerning those matters is not admissible to support a claim for relief to be awarded by the jury. The bulletins listed on page 9 of USG's Second Revised List and the two additional bulletins identified by USG are admissible. The court is willing to reconsider whether the forming plate configuration is the proper subject of any trade secret or confidential information claim in the context of a hearing outside of the jury's presence. Finally, notwithstanding these rulings, Plaintiff will be allowed to introduce limited brief evidence that individual Defendants improperly obtained USG information and materials (even if there is no evidence of use by Lafarge) only to establish Defendants' intentions, motives, or plans.

ENTER:

*[signature: Rebecca R. Pallmeyer]*

Dated:  November 17, 2009            _____
                                     REBECCA R. PALLMEYER
                                     United States District Judge

(Final-USG_Hart_Claims-Damages)